# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### December 12, 2013 Session

## JERE EUGENE PIERCE v. LARRY A. PASCHALL, ET AL.

**Direct Appeal from the Chancery Court for Lake County**
**No. 5755     Tony Childress, Chancellor**

_____

**No. W2013-00478-COA-R3-CV - Filed December 30, 2013**

_____

This is a property boundary dispute. The trial court entered judgment in favor of Plaintiff and found that Defendant did not acquire disputed property bordering the western edge of Plaintiff's property and the eastern edge of Defendant's property by adverse possession. The trial court also found that Defendant did not demonstrate laches. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Charles M. Agee, Jr., Dyersburg, Tennessee, for the appellant, Larry A. Paschall.

John W. Palmer and Julie W. Palmer, Dyersburg, Tennessee, for the appellee, Jere Eugene Pierce.

**MEMORANDUM OPINION[1]**

This property dispute concerns approximately three acres of farm property ("the

_____

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

1

disputed property) bordering the western boundary of Plaintiff's real property and the eastern boundary of Defendant's real property in Lake County. In 1976, Plaintiff Jere Eugene Pierce (Mr. Pierce) acquired approximately 150 acres of real property ("the Pierce tract") in Lake County. Mr. Pierce's deed was recorded in June 1976. The western edge of the Pierce tract borders the eastern edge of a tract of real property ("the Paschall tract") purchased by Defendant Larry Paschall (Mr. Paschall) from Frank Burnett (Mr. Burnett) at public auction on November 22, 2003. Mr. Paschall recorded his deed on January 9, 2004.

On January 5, 2011, Mr. Pierce filed an action in the Chancery Court for Lake County asserting that, due to a mistake in the survey relied upon in Mr. Paschall's deed, the Paschall tract encroached upon the Pierce tract. Mr. Pierce asserted that he had continuous and exclusive use and possession of the disputed property from June 1976 until "sometime after January 9, 2004," when Mr. Paschall recorded his deed. He asserted that an accurate survey confirmed that the disputed property was properly included in the Pierce tract; that Mr. Paschall had profited from the use and possession of the disputed property after January 9, 2004; and that Mr. Pierce should be entitled to recover the profits attributable to the disputed property.

Mr. Paschall answered in March 2011, denying Mr. Pierce's assertions and asserting the affirmative defenses of laches and adverse possession. On March 25, 2011, Mr. Paschall filed a third party complaint against Mr. Burnett. In his complaint, Mr. Paschall asserted that, when he purchased the approximately 250-acre tract from Mr. Burnett, he and Mr. Burnett entered into an escrow agreement whereby they agreed that $5,000.00 of the purchase money would be held in an escrow account until Mr. Burnett entered into a boundary line agreement with Mr. Pierce. He asserted that in September 2010, he was contacted by Mr. Burnett's attorney, Bill Jordan (Mr. Jordan), who informed him that the boundary line dispute between Mr. Burnett and Mr. Pierce had been resolved and demanded payment of the $5,000 held in escrow. Mr. Pierce asserted that, relying on Mr. Jordan's representations, he caused payment of $5,000 to be issued to Mr. Burnett. He asserted that Mr. Burnett should be ordered to return the $5,000 to Mr. Paschall where Mr. Pierce had filed a complaint claiming ownership of the disputed property.

Mr. Burnett answered Mr. Paschall's third party complaint in June 2011. Although Mr. Burnett admitted receiving the $5,000 payment from Mr. Paschall, he neither admitted nor denied communications between Mr. Paschall and Mr. Jordan. He asserted that Mr. Paschall had failed to state a claim; accord and satisfaction; and that the claim was barred by the statute of limitations.

Following trial of the matter in November 2012, by order entered December 17, 2012, the trial court found that a 2002 survey done by L. I. Smith & Associates, Inc. ("the Smith

survey") was not accurate, and that a December 2010 survey done by McClure Associates was more accurate. The trial court also found that Mr. Burnett's and Mr. Paschall's recorded deeds included the disputed property as included by the Smith Survey, but that prior deeds included in the chain of title did not include the disputed property. The trial court accordingly found that the disputed area was contained within the Pierce tract. The trial court also found that, although Mr. Paschall did not record his deed until January 9, 2004, he took actual physical possession of "the majority of the property" by performing field work on the property prior to that date. The trial court further found, however, that the disputed property included a "turn road" and that the majority of the turn road and the property east of it were in Mr. Pierce's possession when Mr. Paschall recorded his deed. The trial court found that Mr. Paschall had failed to demonstrate adverse possession or tacking where the disputed property was in the possession of Mr. Pierce prior to January 9, 2004, and had not been farmed by Mr. Burnett; found that Mr. Paschall had failed to demonstrate laches where he failed to demonstrate an unreasonable delay by Mr. Pierce and where Mr. Paschall was aware of the boundary line dispute when he purchased the property; and awarded Mr. Pierce damages in the amount of $2,628.42. The trial court set Mr. Paschall's third party complaint against Mr. Burnett to be heard in February 2013. Mr. Paschall filed a premature notice of appeal on January 7, 2013. On April 10, 2013, the trial court granted Mr. Pierce's January 11and January16, 2013, motions to amend its December 2012 order to include a legal description of the boundary line established by the court. Mr. Paschall's third party complaint against Mr. Burnett was heard in April 2013. By order entered April 9, 2013, the trial court entered judgment in favor of Mr. Paschall against Mr. Burnett in the amount of $5,568. The trial court's judgment accordingly became final on April 9, 2013, and oral argument was heard by this Court in December 2013.

### *Issues Presented*

Mr. Paschall presents the following issues for our review, as presented by him:

(1)     Whether the trial court erred in ruling that Appellant failed to prove by clear and convincing evidence that he possessed the disputed land for the requisite period of time to invoke either the common law or statutory claim of adverse possession and therefore bar Appellee's cause of action.

(2)     Whether the trial court erred in ruling that the defense of laches did not apply in this case and therefore was not a bar to Appellee's cause of action.

3

***Standard of Review***

We review the trial court's findings of fact *de novo* on the record, with a presumption of correctness, and will not reverse those findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes,* 21 S.W.3d 188, 190 (Tenn. 2000). Insofar as the trial court's determinations are based on its assessment of witness credibility, we will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002). Our review of the trial court's conclusions on matters of law, however, is *de novo* with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005). We likewise review the trial court's application of law to the facts *de novo,* with no presumption of correctness. *State v. Thacker,* 164 S.W.3d 208, 248 (Tenn. 2005).

***Discussion***

We turn first to Mr. Paschall's assertion that the trial court erred by determining that he did not possess the disputed property by statutory or common law adverse possession. In his brief, Mr. Paschall asserts the preponderance of the evidence does not support the trial court's finding that Mr. Pierce was in actual possession of the disputed property prior to January 9, 2004. Mr. Paschall asserts he took possession of the property "almost immediately" after the November 2003 auction, and that Mr. Pierce failed to assert his claim within the seven year statutory period. He also asserts that his period of possession may rightfully be "tacked" on the period of possession by Mr. Burnett.

There is no dispute in this matter that Mr. Paschall did not record his deed to the property purchased from Mr. Burnett until January 9, 2004. Thus Mr. Paschall may not assert adverse possession under color of title where Mr. Pierce filed his complaint on January 5, 2011, within the seven-year statutory period. Tenn. Code Ann. § 28-2-102. Tennessee Code Annotated §28-2-103 "protects an adverse holder without color of title only to that portion of land which is held adversely." *Shearer v. Vandergriff*, 661 S.W.2d 680, 682 (Tenn. 1983). It is defensive only, and may not be used "as a means to bar use by the rightful owner." *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d. 366, 376 (Tenn. 2007). The section provides:

> (a) No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.
> (b) No possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or

4

hereditaments is duly recorded in the county in which the lands are located.

Tenn. Code Ann. § 28-2-103. The section does not involve color of title, but protects an adverse holder as to the portion of land in his actual possession after a period of seven years. *Cumulus Broadcasting*, 226 S.W.3d at 376. Common law adverse possession, on the other hand, "rests upon the proposition 'that where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed.'" *Id*. at 376-77 (quoting *Ferguson v. Prince,* 136 Tenn. 543, 190 S.W. 548, 552 (Tenn. 1916)). The party claiming ownership by adverse possession carries the burden to demonstrate, by clear and convincing evidence, that his possession was "exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time." *Id.* at 377 (citations omitted).

Successive possessions, known as "tacking," may establish the required period of years if there is no interruption. *Id*. (citations omitted). "What is required for tacking is that 'the adverse possessor intended to and actually did turn over possession of . . . [the] land.'" *Id.* (quoting 10 *Thompson on Real Property* § 87.14, at 178; *see also Derryberry v. Ledford*, 506 S.W.2d 152, 156 (Tenn. Ct .App. 1973)). Intent for the purposes of tacking may be established by "parol evidence or implied from circumstances." *Id.* (quoting *Peoples v. Hagaman*, 31 Tenn. App. 398, 215 S.W.2d 827, 831 (Tenn. Ct. App. 1948)). "Typically, fencing is an indicia of ownership." *Id.* (citing *Bensdorff v. Uihlein*, 132 Tenn. 193, 177 S.W. 481, 482 (Tenn. 1915). "'The possession, use, and dominion may be as absolute and exclusive where there is no dispute as to boundary, and hence the occupant has no actual intention to claim adversely to anyone, as where such an intention exists.'" *Id.* (quoting *Gibson v. Shular*, 29 Tenn. App. 166, 194 S.W.2d 865, 867 (Tenn. Ct. App.1946)).

Adverse possession is a question of fact to be determined by the trier of fact. *Id*. When resolving a boundary line dispute, the trial court must "evaluate all the evidence and assess the credibility of the witnesses." *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App.1999) (citing *Norman v. Hoyt*, 667 S.W.2d 88, 91 (Tenn. Ct. App.1983)). When testimony is conflicting, the trial court is in the best position to observe the witnesses and evaluate their credibility. Thus, we will give great weight to a trial court's credibility determinations. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). "This deferential standard specifically applies in a boundary dispute where a trial court must choose between two competing surveys." *Bridgewater v. Adamczyk*, No. M2012-00697-COA-R3-CV, 2013 WL 485679, at *9 (Tenn. Ct. App. Feb. 6, 2013), *perm. app. denied* (Tenn. Ct. App. Aug. 27, 2013)(citations omitted). "When determining a boundary line that is in dispute, the court must look first to the natural objects or landmarks on the property, then to the artificial objects or landmarks on the property, then to the boundary lines of adjacent pieces of property, and finally to courses and distances contained in documents relevant to the disputed property." *Id.* (citations omitted).

We note that the trial court made detailed, comprehensive findings of fact in this matter after reviewing ten exhibits and hearing testimony from three witnesses in addition to Mr. Paschall and Mr. Pierce. The trial court's determination that the Smith survey was not accurate has not been appealed. In light of the evidence and its assessment of the credibility of all the witnesses who testified in this matter, the trial court found that Mr. Paschall did not exercise possession of the disputed property prior to recording his deed. Upon review of the record, the evidence does not preponderate against the trial court's finding that Mr. Paschall had failed to demonstrate exclusive, actual, adverse, continuous, open, and notorious use of the disputed property for seven years prior to January 5, 2011.

It is undisputed that Mr. Paschall took possession of the majority of the property purchased from Mr. Burnett shortly after he purchased it in November 2003, and began cutting cotton stalks in December 2003. As the trial court noted, the property in dispute consists of a turn road, culvert, and an area east of the turn road. It is undisputed that Mr. Paschall removed and replaced the culvert at some point. Mr. Paschall testified that he replaced it in the same location while Mr. Pierce testified that the culvert was moved farther east. Mr. Paschall's counsel acknowledged at oral argument before this Court that the culvert was removed in either December 2003 or January 2004, but no definitive date was established in the trial court. Although Mr. Paschall testified that he cut cotton stalks on the Paschall tract in December 2003, he also testified that the cotton stalks were on the west side of the turn road. The trial court found that there were no cotton stalks on the turn road or the area east of the turn road when Mr. Paschall and his employees cut stalks in December 2003, and the evidence does not preponderate against this finding. The evidence also does not preponderate against the trial court's finding that no winter crop was planted on the disputed property when Mr. Paschall recorded his deed. Upon review of the record, find that Mr. Paschall failed to carry his burden to demonstrate adverse possession of the disputed property by clear and convincing evidence. We affirm the trial court's judgment on this issue.

We also affirm the trial court's judgment with respect to Mr. Paschall's affirmative defense of laches. The doctrine of laches generally applies to actions that, unlike the matter before us, are not governed by a statute of limitations. *Gleason v. Gleason*, 164 S.W.3d 588, 592 (Tenn. Ct. App. 2004). It may apply notwithstanding an applicable statute of limitations only in cases of gross laches. *Id*. The equitable defense of laches is based on a finding of inexcusable, negligent, or unreasonable delay by the plaintiff which results in prejudice to the defendant. *Id*. The doctrine of laches requires a factual finding that it would be unjust or inequitable to enforce the plaintiff's rights. *Id*. In the current case, it is clear that Mr. Paschall was aware that the boundary line between Mr. Pierce's tract and the tract purchased from Mr. Burnett was disputed when the property was sold at auction in 2003. As noted above, Mr. Paschall held $5,000 of the purchase price in escrow pending final resolution of the dispute, and recovered damages in the amount of $5,568 from Mr. Burnett. Mr. Paschall

6

has failed to carry his burden to demonstrate gross laches in this case. We affirm on this issue.

## *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this matter are taxed to the Appellant, Larry A. Paschall, and his surety, for which execution may issue if necessary. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs.

_____
DAVID R. FARMER, JUDGE